**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMARITAN SOLAR LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| | ) | |
| BOYD JONES CONSTRUCTION CO., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Samaritan Solar LLC ("Samaritan"), by and through its undersigned counsel, files the following Complaint against Boyd Jones Construction Co. ("BJC") and, in support thereof, states as follows:

## NATURE OF THIS CAUSE OF ACTION

1. This action arises from Defendant's material breaches of a Solar Project Engineering, Procurement and Construction Agreement ("EPCA") dated March 20, 2025, pursuant to which Defendant agreed to design, procure, construct, complete, and deliver a utility-scale solar energy facility located in Erie County, Pennsylvania (the "Project"). BJC failed to timely execute the Project; failed to adequately staff the Project with qualified personnel; and failed to adequately supervise the work necessary to complete the Project. Indeed, the Project was plagued by BJC's poor project management, insufficient Project implementation, and inability to coordinate effectively between the Owner, subcontractors, and other stakeholders. As a result of BJC's numerous defaults under the EPCA, Samaritan ultimately terminated BJC from the Project. Following termination, BJC refused to comply with its post-termination obligations under the

EPCA, including the prompt assignment of subcontracts and supplier agreements and the provision of Project information necessary for Samaritan to complete the Project. BJC's post-termination breaches of the EPCA are causing further damages to Samaritan. Samaritan now brings this breach of contract claim in order to recover damages resulting from Defendant's failure to perform its obligations under the contract.[1]

**PARTIES**

2. Plaintiff, Samaritan, is a Pennsylvania limited liability company with its principal place of business at 2650 Locust St., Ste 100, St. Louis, MO 63103.

3. Samaritan's sole member is BCP PA 2025 Holdings, LLC, which is a Pennsylvania limited liability company. None of BCP PA 2025 Holdings, LLC's members are citizens of the state of Nebraska.

4. Defendant BJC is a Nebraska corporation with its principal place of business at 950 S. 10th St., Suite 100, Omaha NE 68108.

**VENUE AND JURISDICTION**

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship amongst the parties and the amount in controversy exceeds $75,000.

6. Venue is proper in this Court under 28 U.S.C.§ 1931(b)(2) because, among other things, a substantial part of the events and omissions giving rise to the claim occurred and the Project at issue is situated in Erie County, Pennsylvania, which is within the Western District of Pennsylvania.

[1] The EPCA is subject to a confidentiality provision. As a result, the EPCA will be filed as Ex. A with the Court upon the entry of an appropriate confidentiality order.

7. Additionally, under the EPCA, the parties agreed that "any suit, action or other legal proceeding by or against any Party (or its Affiliates or designees) with respect to or arising out of this Agreement shall be brought in the federal courts of the United States or the Courts of the Commonwealth of Pennsylvania." EPCA, § 16.4 (entitled Governing Law; Submission to Jurisdiction; Venue).

8. All conditions precedent to bringing this action have occurred, have been satisfied, or have been waived.

## FACTUAL BACKGROUND

### A. The Parties Entered into a Fixed-Price Turnkey EPCA.

9. Samaritan is the owner and developer of the Project, known as the Samaritan Solar Project, a utility-scale solar energy facility located in Erie County, Pennsylvania.

10. At the outset of the parties' commercial relationship, BJC held itself out as a contractor with expertise, personnel, licensing, and resources necessary to design, engineer, procure, construct, commission, and deliver a complete utility-scale solar facility.

11. On March 20, 2025, Samaritan and BJC entered into the Solar Project EPCA. *See* EPCA,.[2]

12. The EPCA is a fixed-price turnkey construction contract under which BJC agreed to design, procure, construct, complete, test, commission and deliver the Project for a fixed contract price of $13,315,709. EPCA, §§ 2.1, 5.1.

13. Under the EPCA, BJC agreed, on a fixed-price turnkey basis, to "diligently, duly and properly perform and complete the Work" and to "achieve the Key Project Milestones by the

[2] All capitalized terms stated herein shall have the same meaning as set forth in the EPCA.

Key Dates, Mechanical Completion by the Guaranteed Mechanical Completion Date, and Substantial Completion by the Guaranteed Substantial Completion Date." EPCA, § 2.1.

14. The EPCA further required BJC to provide all labor, equipment, materials, management, supervision, scheduling, reporting, procurement, commissioning, testing, and other services necessary to complete the Project. EPCA, §§ 2.1, 2.11, 4.1.

15. The EPCA established a strict project schedule, including a Guaranteed Mechanical Completion Date of November 24, 2025 and a Guaranteed Substantial Completion Date of December 31, 2025. EPCA, §§ 4.1(b), 4.3, 4.5.

**B. BJC Immediately Began Falling Behind Schedule.**

16. Almost immediately after execution of the EPCA, BJC began missing critical project milestones and falling behind the contractual schedule.

17. BJC failed to timely complete important engineering and design deliverables that were necessary to maintain progress toward Mechanical Completion and Substantial Completion.

18. For example, electrical issued for construction ("IFC") packages were due on May 23, 2025, but were not delivered until June 11, 2025, with revisions continuing into October 2025.

19. BJC also fell behind on numerous critical-path construction activities, including underground DC installation, foundation installation, mechanical installation, underground AC installation, supervisory control and data acquisition ("SCADA") design and installation, met stations, and point of interconnection ("POI") installation.

20. 90% SCADA Engineering drawings were due on May 9, 2025 and IFC engineering drawing were due on May 23, 2025, but were not delivered timely.

21. Throughout the Project, BJC did not timely acquire materials and equipment necessary to complete the work on the Project, further compounding the delays.

22. Additionally, BJC failed to update its procurement activities based on design changes, resulting in the wrong equipment and activities being delivered to the Project site.

23. As of September 3, 2025, Owner's records reflected zero percent completion of module, above-ground racking installation, and POI installation while several other critical-path activities remained incomplete or materially behind schedule.

24. The preliminary delays were not isolated events. Rather, they reflected a continuing pattern of deficient project management, insufficient staffing, missed milestones, and failure to perform the Work in accordance with the EPCA.

25. These delays were underscored by BJC's poor management, implementation of improper means and methods, and inability to coordinate and communicate effectively between the Owner, subcontractors, and other stakeholders.

**C. BJC Failed to Timely Achieve Mechanical Completion and Failed to Meet Substantial Completion Altogether.**

26. The EPCA obligated BJC to achieve Mechanical Completion by the Guaranteed Mechanical Completion date of November 24, 2025. EPCA, §§ 4.1(b), 4.3.

27. However, BJC failed to achieve Mechanical Completion by the Guaranteed Mechanical Completion date.

28. Instead, BJC did not present the Project to Samaritan as having reached Mechanical Completion until December 8, 2025, fourteen (14) days after the contractual deadline.

29. As a result of BJC's failure to timely achieve Mechanical Completion, Samaritan incurred Delay Liquidated Damages and other direct damages recoverable under the EPCA.

30. BJC further failed to achieve Substantial Completion by the Guaranteed Substantial Completion date of December 31, 2025. EPCA, §§ 4.1(b), 4.5.

31. The Project remained burdened by more than ninety (90) incomplete items and other outstanding work that prevented satisfaction of the contractual requirements for Substantial Completion.

32. Those incomplete items include, but are not limited to SCADA Commissioning, NETA Acceptance Testing Specifications of electrical equipment, POI equipment testing and commissioning, and Project capacity testing.

33. Despite repeated communications from Samaritan regarding the status of the Project and the outstanding items required to achieve Substantial Completion, BJC failed to complete the remaining Work and satisfy the contractual prerequisites for Substantial Completion. BJC also failed to complete required civil and stormwater-related work, including work necessary to satisfy applicable stormwater pollution prevention plan ("SWPPP") requirements, further increasing the costs required to complete the Project.

34. As a result of BJC's failure to timely achieve Mechanical Completion and Substantial Completion, Samaritan exercised its contractual rights under Sections 5.4(c), 5.8, and 12.4(g) of the EPCA to dispute BJC's entitlement to payment, offset amounts owed by BJC, and withhold amounts otherwise payable under the Agreement.

35. On May 14, 2026, Samaritan issued a formal Notice of Withholding advising BJC that Delay Liquidated Damages arising from BJC's delays had reached the contractual cap and that Samaritan intended to withhold BJC's May 5, 2026 Application for Payment in its entirety.

36. As a result, BJC never reached Substantial Completion by the Guaranteed Substantial Completion deadline.

37. As a direct result of BJC's failure to timely achieve Substantial Completion, Samaritan incurred additional Delay Liquidated Damages, Completion Costs, and other direct damages recoverable under the EPCA.

**D. BJC Failed to Provide Sufficient Labor and Resources.**

38. The EPCA required BJC to "furnish sufficient labor forces" and work such hours as necessary to complete the Project in compliance with the Project Schedule and Guaranteed Completion dates. EPCA, § 4.1(c).

39. In breach of this obligation, BJC failed to provide sufficient workforce and resources to prosecute and complete the Work. *See* EPCA, §§ 4.1(c), 2.1.

40. Despite BJC's representations that it possessed the requisite expertise and technical know-how to complete the Project, BJC quickly revealed that it did not have adequate personnel to timely and capably conduct the work.

41. Indeed, numerous key BJC personnel at all levels—executive, project management, and construction management—departed BJC during the course of the Project leading to continuity and quality issues, as well as requiring additional time and cost to bring replacement personnel up to speed.

42. BJC also failed to staff its project team with a qualified project engineer, quality control personnel, commissioning personnel, operational personnel, and certified environmental inspectors.

43. On multiple occasions, Samaritan had to devote its qualified personnel and resources to assist BJC with the completion of construction tasks that were solely the responsibility of BJC.

44. Rather than increasing resources to recover the schedule, BJC materially reduced workforce levels and available project resources even as the Project fell further behind schedule.

45. BJC's personnel turnover and resource reductions further impaired its ability to complete the Project and satisfy the requirements of the EPCA.

46. Additionally, BJC failed to provide basic materials necessary for the commissioning process, including, but not limited to, electrical extension cords, required handheld meters, tools required to fix the system structure, proprietary serial cable and software required to for system communications, relevant drawings, and proper electrical hardware for terminations.

47. BJC's failure to provide sufficient labor and resources contributed directly to the Project's inability to achieve Mechanical Completion and Substantial Completion on time. Ex. C at 4-5.

48. BJC's failures constituted Contractor Events of Default under Sections 12.2(b) and 12.2(d) of the EPCA. EPCA, §§ 12.2(b), 12.2(d).

**E. BJC Failed to Comply with Required Project Administration Procedures.**

49. The EPCA also imposed detailed project administration, scheduling, and reporting obligations on BJC. EPCA, § 4.2.

50. Among other requirements, BJC was required to maintain a detailed CPM Schedule, provide monthly progress reports, submit updated schedules, provide daily construction reports, and furnish remedial action plans whenever project milestones fell behind schedule. EPCA, § 4.2.

51. Despite those requirements, Samaritan repeatedly identified deficiencies in BJC's reporting obligations and project administration.

52. Samaritan identified ongoing deficiencies in project reporting on numerous occasions, including July 7, 2025, August 14, 2025, August 25, 2025, November 13, 2025, February 10, 2026, February 19-20, 2026, and April 2026.

53. Indeed, BJC failed to provide required Monthly Progress Reports and failed to provide adequate supporting information required by the EPCA. EPCA, § 4.2 (entitled Contractor Schedule and Reports).

54. BJC also repeatedly failed to provide adequate recovery plans or completion plans despite being significantly behind schedule. EPCA, § 4.2.

55. These failures materially impaired Samaritan's ability to evaluate project status, completion risks, and schedule recovery and remediation efforts.

**F. BJC Failed to Submit Proper Payment Applications and Lien Waivers.**

56. Section 5.4(a) of the EPCA required BJC to submit properly completed applications for payment together with supporting documentation, conditional lien waivers, unconditional lien releases, and other required backup materials. EPCA, § 5.4(a).

57. BJC failed to provide complete conforming payment applications as required by the EPCA.

58. Multiple payment applications lacked required lien waiver packages and other supporting documentation required by the EPCA.

59. Samaritan consistently notified BJC of those payment application deficiencies. For example:

a. On February 10, 2026, Samaritan provided BJC with a detailed written deficiency list identifying numerous defects in BJC's January Monthly Progress Report and failure to provide information necessary to support payment;

b. On February 19 and 20, 2026, Samaritan identified additional deficiencies in BJC's payment support materials, including missing unconditional lien waivers and deficiencies in the Monthly Progress Report;

c. On March 12, 2026, Samaritan and BJC discussed missing lien waivers on a phone call, and Samaritan specifically identified a missing conditional lien waiver as required for the February payment application;

d. On March 17, 2026, Samaritan requested in writing specific missing conditional lien waivers and other supporting documentation as required for the January pay application;

e. On April 2, 2026, Samaritan requested specific missing conditional lien waivers for the January and February pay applications;

f. On April 6, 2026, Samaritan requested a specific missing conditional lien waiver for the February pay application; and

g. On July 29, 2026, Samaritan rejected BJC's final payment application, as it improperly included amounts that were subject of previous withholding notices and that related to disputed and unapproved change orders.

60. As a result, numerous payment applications were never properly completed by BJC as required by the EPCA, leading to the rejection of the incomplete and/or deficient payment applications by Samaritan, in accordance with the terms of the EPCA.

**G. BJC Failed to Comply with Contractual Notice Procedures.**

61. The EPCA established mandatory notice procedures governing any claimed Excusable Events, scheduled extensions, delay claims, Change Order requests. EPCA, §§ 6.5, 7.3(a).

62. Section 6.5 required BJC to provide written notice of any claimed Excusable Event within five business days thereafter. EPCA, §§ 6.5, 7.3(a).

63. Section 7.3(a) further provides that a failure to comply with the required Change Order Procedures "shall constitute a waiver of Contractor's rights to such Change Order." EPCA, § 7.3(a).

64. Although BJC later attempted to justify its performance failures through claims for excusable delay, change order requests, requests for equitable adjustments, and requests for additional compensation, BJC's claims did not qualify for such treatment under the EPCA and, in any event, BJC failed to comply with the EPCA's mandatory notice procedures.

65. For example, BJC became aware of claimed pile-refusal conditions no later than September 8, 2025, yet did not provide formal written notice until September 24, 2025.

66. On December 5, 2025, BJC submitted a further "Notice of Continuing Delay" relating to the same alleged pile-refusal conditions and related impacts.

67. Then, on or about March 26, 2026, BJC submitted a Request for Equitable Adjustment ("REA") seeking more than $2.4 million in additional compensation and additional schedule relief months after the events purportedly giving rise to the requested adjustment.

68. Samaritan rejected the REA because, among other reasons, BJC had failed to comply with the notice requirements, the Change Order procedures, and the waiver provisions of the EPCA.

69. By failing to comply with the EPCA's mandatory notice and Change Order procedures, BJC waived any contractual entitlement to the schedule relief, compensation, Change Orders, or other adjustments sought through the REA and may not rely upon those claims to excuse its delays or failures to achieve Mechanical Completion or Substantial Completion. EPCA, §§ 6.5, 7.3(a).

### H. BJC Improperly Filed Mechanics' Liens That Further Harmed, and Continues to Harm, the Project.

70. On or about April 24, 2026, BJC improperly filed a mechanics' lien claim in the Court of Common Pleas of Erie County, Pennsylvania in the amount of approximately $3,063,630.46 (the "First Mechanics' Lien").

71. BJC filed the First Mechanics' Lien despite the existence of ongoing disputes concerning payment entitlement, Delay Liquidated Damages, Contractor Events of Default, completion status, and other offsets available to Samaritan under the EPCA.

72. Additionally, the First Mechanics' Lien failed to provide any substantiation for the claimed amount.

73. Indeed, BJC did not include any evidence of, or documentation relating to, the work allegedly performed or costs incurred by BJC.

74. The First Mechanics' Lien encumbered title to the Project property and further impaired Samaritan's ability to finance, refinance, and complete the Project.

75. The filing of the First Mechanics' Lien also prevented satisfaction of the requirements for Substantial Completion under the EPCA, which requires that BJC not take or allow any action to occur that prevents title from transferring to Samaritan. EPCA, § 4.5(b)(xvi).

76. Following the filing of the First Mechanics' Lien, Samaritan incurred significant additional costs and expenses associated with obtaining substitute security to discharge the lien from the Project property, so that Samaritan could close on necessary financing.

77. In connection with the First Mechanics' Lien proceedings, Samaritan posted substitute security and obtained the discharge of the First Mechanics' Lien from the Project property.

78. Thereafter, on or about July 28, 2026, BJC improperly filed a second mechanics' lien Claim in the Court of Common Pleas of Erie County, Pennsylvania in the amount of approximately $3,977,022.00 (the "Second Mechanics' Lien"), further impairing title to the Project and increasing Samaritan's damages.

79. BJC's obligation to withhold from taking any action that prevents title from transferring to Samaritan survives its termination from the Project. Ex. A § 4.5(b)(xvi).

80. The Second Mechanics' Lien suffered from the same defects as the First Mechanics' Lien—namely the fact that it ignored BJC's contractual obligations and disputes related thereto and contained no evidence or documentation substantiating the amount claimed.

81. Upon information and belief, the Second Mechanics' Lien includes amounts that are duplicative of amounts previously asserted in the First Mechanics' Lien and otherwise disputed by Samaritan.

82. Despite the posting of substitute security and the discharge proceedings relating to the First Mechanics' Lien, BJC continued to pursue lien-related remedies against the Project, including by filing the Second Mechanics' Lien.

83. As a result of BJC's actions, Samaritan has incurred and continues to incur damages arising from the filing of the First Mechanics' Lien and the Second Mechanics' Lien, including financing-related impacts, legal fees and expenses, costs associated with discharge of the liens, and other damages to be determined at trial. The First Mechanics' Lien and Second Mechanics' Lien further impaired Samaritan's ability to obtain or maintain Project financing and increased the costs associated with Project completion and administration.

**I. Samaritan Provided Notice and Opportunity to Cure.**

84. Despite BJC's repeated failures, Samaritan made substantial efforts to facilitate completion of the Project.

85. Through communications between Samaritan and BJC management, Samaritan requested substantiation for claimed delays, requested recovery plans, sought corrective action,

and provided BJC with multiple opportunities to bring the Project back into compliance with the EPCA.

86. Samaritan participated in management-level negotiations pursuant to Section 16.3 (a) of the EPCA in an effort to resolve the parties' disputes and permit completion of the Project.

87. When those efforts proved unsuccessful, Samaritan issued its Notice of Continuing Default dated June 8, 2026. A true and correct copy of the Notice of Continuing Default is attached hereto as Exhibit B.

88. The Notice of Continuing Default expressly identified BJC's continuing defaults, Contractor events of Default, and general failures to comply with the EPCA.

89. The Notice of Continuing Default specifically identified BJC's failure to achieve Mechanical Completion, failure to achieve Substantial Completion, failure to diligently prosecute the Work, failure to comply with Project Schedule requirements, failure to satisfy project administration requirements, failure to provide proper payment applications and lien waivers, failure to comply with contractual notice procedures, and failure to cure ongoing defaults.

90. The Notice of Continuing Default also advised BJC that its failure to meet the Guaranteed Mechanical Completion deadline resulted in $126,000 in Delay Liquidated Damages, and paired with its continued failure to meet the Substantial Completion deadline, resulted in BJC reaching the contractual cap of $1,331,570.90 of Delay Liquidated Damages.

91. The Notice of Continuing Default demanded cure of the identified defaults and afforded BJC an opportunity to correct the continuing Contractor Events of Default.

92. BJC failed to cure the defaults identified in the Notice of Continuing Default within the time provided by the EPCA.

93. The EPCA required BJC to diligently carry on the Work notwithstanding disputes concerning Change Orders, compensation, or other issues so long as all undisputed amounts payable to BJC had been paid. EPCA, § 4.11.

94. Following issuance of the Notice of Continuing Default, the Project continued to deteriorate, Contractor Events of Default remained ongoing, and Samaritan continued to suffer immediate and worsening harm arising from delay, incomplete work, impairment of project financing, and the absence of any credible path to Substantial Completion.

95. BJC did not complete any additional substantive Work on the Project following the June 8, 2026 Notice of Continuing Default.

96. Despite substantively ceasing Work, and despite continuing to maintain control over Project information, subcontractor relationships, and completion activities (known as care, custody, and control or "CCC"), BJC failed to take action necessary to complete the Project or permit Samaritan to step in to do so.

97. Following issuance of the Notice of Continuing Default, Samaritan directed BJC to take actions necessary to facilitate electricity generation and continued operation of the Project. BJC did not timely comply with those directives, thereby impairing the Project's ability to generate electricity, reducing revenue otherwise available from Project operations, and jeopardizing Samaritan's contractual relationships with power purchasers and other Project stakeholders.

98. As a result of BJC's failure to cure, Samaritan exercised its contractual rights under Article 12 of the EPCA and issued a Notice of Termination for Cause dated July 7, 2026. A true and correct copy of the Notice of Termination is attached hereto as Exhibit C.

99. In the Notice of Termination, Samaritan expressly invoked Section 12.4(a) of the EPCA and terminated in the Agreement for cause based upon BJC continuing Contractor Events of Default and failure to cure.

100. As a further result of BJC's defective work, delays, and continuing defaults, Samaritan has already received substantial third-party claims and charges relating to the Project and reasonably expects to incur additional third-party claims and charges in the future.

**J. BJC Failed to Properly Transition the Project Following Termination.**

101. Following issuance of the Notice of Termination, BJC acknowledged receipt of the termination and represented that it would cooperate in an orderly transition of the Project.

102. The Notice of Termination expressly directed BJC to, among other things, provide subcontractor information, contracts, schedules, project records, procurement information, warranty materials, vendor information, and other documents necessary for Samaritan to complete the Project.

103. The Notice of Termination further invoked Samaritan's rights under Section 12.4(c) of the EPCA, which requires BJC, upon termination, to assign requested subcontracts, purchase orders, and permits and to deliver all information and documents reasonably necessary to permit Samaritan to complete or cause completion of the Work. EPCA, § 12.4(c).

104. These transition obligations are both triggered by and survive BJC's termination from the Project.

105. Despite those obligations, and despite BJC's representations that it would cooperate in the transition, BJC failed to promptly provide all information necessary for Samaritan to assume responsibility for and complete the remaining Work or otherwise transfer custody, care, and control of the Project to Samaritan.

106. Following termination, Samaritan repeatedly requested the assignment of subcontracts and vendor agreements and sought project information, subcontractor information, vendor information, project records, schedules, procurement records, warranty information, and other materials necessary to allow Samaritan and its replacement contractors to evaluate Project status and complete the remaining Work.

107. Despite those requests, BJC did not promptly provide all such information and materials—refusing to provide the requested information and materials for over thirty (30) days following termination. BJC's failure to promptly provide such information delayed Samaritan's efforts to evaluate the status of the Project, secure replacement contractors, coordinate with subcontractors and vendors, and complete the remaining Work.

108. In addition, BJC failed to promptly transfer possession and control of Project information, records, and materials necessary for Samaritan to effectively manage and complete the Project following termination.

109. As a result, Samaritan was required to expend additional time, money, and resources investigating Project status, identifying subcontractors and vendors, obtaining project information, preserving the Work, and arranging completion of the Project.

110. As of the date of this Complaint, Samaritan is still not in possession of certain subcontractor information, vendor records, schedules, project documentation, procurement files, and other transition materials necessary to efficiently complete the Project.

111. As a result, Samaritan has incurred and continues to incur increased project administration costs, transition costs, consultant expenses, replacement contractor costs, delay damages, and Completion Costs.

**COUNT I**
**BREACH OF CONTRACT**
**Failure to Timely Achieve Mechanical Completion**

112. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 111 as though fully set forth herein.

113. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

114. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

115. BJC materially breached the EPCA.

116. Sections 4.1(b) and 4.3 of the EPCA required BJC to achieve Mechanical Completion by November 24, 2025.

117. BJC did not achieve Mechanical Completion until December 8, 2025.

118. BJC therefore failed to timely achieve Mechanical Completion as required by the EPCA.

119. BJC's failure to timely achieve Mechanical Completion constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(e).

120. As a direct and proximate result of BJC's breach, Samaritan suffered Delay Liquidated Damages and other direct damages recoverable under the EPCA.

121. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT II**
**BREACH OF CONTRACT**
**Failure to Timely Achieve Substantial Completion**

122. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

123. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

124. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

125. Sections 4.1(b) and 4.5 of the EPCA required BJC to achieve Substantial Completion by December 31, 2025.

126. BJC failed to satisfy the contractual prerequisites to Substantial Completion and left numerous punch-list items, closeout items, and other Work incomplete.

127. BJC therefore failed to timely achieve Substantial Completion as required by the EPCA.

128. BJC's failure to timely achieve Substantial Completion constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(f).

129. As a direct and proximate result of BJC's breach, Samaritan suffered Delay Liquidated Damages, Completion Costs, and other direct damages recoverable under the EPCA.

130. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT III**
**BREACH OF CONTRACT**
**<u>Failure to Diligently Prosecute and Complete the Work</u>**

131. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 130 as though fully set forth herein.

132. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

133. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

134. The EPCA required BJC to diligently, duly, and properly perform and complete the Work and to perform the Work in accordance with the Project Schedule and the Guaranteed Completion Dates. EPCA, §§ 2.1, 4.1(b), 4.1(c).

135. Further, BJC was obligated to continue diligently performing the Work notwithstanding ongoing contractual disputes pursuant to Section 4.11 of the EPCA.

136. BJC failed to diligently prosecute and complete the Work, including by repeatedly missing critical project milestones, falling behind the Project Schedule, failing to cure schedule delays, and otherwise failing to complete the Work necessary to achieve Substantial Completion.

137. BJC's failure to diligently prosecute and complete the Work constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(b).

138. As a direct and proximate result of BJC's breach, Samaritan suffered Delay Liquidated Damages, Completion Costs, increased project administration costs, and other direct damages recoverable under the EPCA.

139. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT IV**
**BREACH OF CONTRACT**
**<u>Failure to Provide Sufficient Labor, Equipment, and Resources</u>**

140. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 139 as though fully set forth herein.

141. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

142. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

143. Section 4.1(c) of the EPCA required BJC to furnish sufficient labor forces and work such hours as necessary to assure completion of the Work in accordance with the Project Schedule and the Guaranteed Completion Dates.

144. BJC failed to provide sufficient labor, equipment, personnel, supervision, and resources necessary to prosecute and complete the Work.

145. Indeed, numerous key BJC personnel at all levels—executive, project management, and construction management—departed BJC during the course of the Project leading to continuity and quality issues, as well as requiring additional time and cost to bring replacement personnel up to speed.

146. BJC also failed to staff its project team with a qualified project engineer, quality control personnel, commissioning personnel, operational personnel, and certified environmental inspectors.

147. BJC also failed to timely and adequately procure equipment and materials necessary to complete the work at the Project.

148. BJC's failure to provide sufficient labor, equipment, personnel, and resources constituted a material breach of the EPCA and a Contractor Event of Default under Sections 12.2(b) and 12.2(d).

149. As a direct and proximate result of BJC's breach, Samaritan suffered Delay Liquidated Damages, increased project administration costs, Completion Costs, and other direct damages recoverable under the EPCA.

150. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT V**
**BREACH OF CONTRACT**
**Failure to Comply with Project Schedule, Reporting, and Recovery Obligations**

151. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 150 as though fully set forth herein.

152. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

153. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

154. Section 4.2 of the EPCA required BJC to comply with detailed project administration, scheduling, reporting, and recovery obligations, including maintaining and updating project schedules, providing Monthly Progress Reports, providing daily construction reports, and furnishing remedial action plans when required.

155. BJC failed to comply with the EPCA's scheduling, reporting, project administration, and recovery obligations.

156. BJC further failed to implement and comply with adequate recovery efforts and remedial action plans despite being behind schedule and despite Samaritan's repeated requests for information, documentation, and a credible path to completion.

157. BJC's failure to comply with the Project Schedule, reporting obligations, and recovery requirements constituted a material breach of the EPCA and a Contractor Event of Default under Sections 12.2(d) and 12.2(p).

158. As a direct and proximate result of BJC's breach, Samaritan suffered Delay Liquidated Damages, increased project administration costs, Completion Costs, and other direct damages recoverable under the EPCA.

159. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT VI**
**BREACH OF CONTRACT**
**Failure to Comply with Mandatory Notice, Claim, Payment Application, and Lien-Waiver Requirements**

160. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 159 as though fully set forth herein.

161. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

162. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

163. The EPCA required BJC to comply with mandatory notice, claim, Change Order, payment application, and lien-waiver requirements. EPCA, §§ 5.4(a), 6.5, 7.3(a).

164. BJC failed to submit properly completed payment applications with all supporting documentation, conditional lien waivers, unconditional lien releases, and other required backup materials as required by Section 5.4(a) of the EPCA.

165. BJC also failed to comply with the EPCA's mandatory notice and Change Order procedures in connection with its claimed Excusable Events, claimed schedule extensions, claimed delays, and requests for additional compensation.

166. BJC nevertheless sought additional compensation and schedule relief through notices, claims, and a Request for Equitable Adjustment that did not comply with the EPCA's contractual notice, claim, and Change Order requirements.

167. BJC's failure to comply with the EPCA's mandatory notice, claim, payment-application, and lien-waiver requirements constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(p).

168. As a direct and proximate result of BJC's breach, Samaritan suffered damages recoverable under the EPCA, including costs and damages associated with disputed payment applications, lien-waiver deficiencies, project delay, and BJC's improper claims for additional compensation and schedule relief.

169. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT VII**
**BREACH OF CONTRACT**
**Improper Mechanics' Liens and Title Impairment**

170. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 169 as though fully set forth herein.

171. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

172. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

173. The EPCA required BJC to perform the Work and administer payment and lien matters in a manner that did not impair title to the Project property and did not prevent satisfaction of the contractual requirements for Substantial Completion. EPCA, § 4.5(b)(xvi).

174. BJC filed and maintained mechanics' liens against the Project despite ongoing disputes concerning payment entitlement, Delay Liquidated Damages, Contractor Events of Default, completion status, offsets, and other defenses available to Samaritan under the EPCA.

175. BJC's filing and maintenance of the First Mechanics' Lien and Second Mechanics' Lien impaired title to the Project property, interfered with Samaritan's ability to finance, refinance, complete, and administer the Project, and increased Samaritan's costs.

176. BJC's filing and maintenance of the First Mechanics' Lien against the Project property constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(s), and the filing and maintenance of the First Mechanics' Lien and Second Mechanics' Lien further prevented satisfaction of the requirements for Substantial Completion.

177. As a direct and proximate result of BJC's breach, Samaritan incurred costs associated with bonding off, discharging, and responding to the mechanics' liens, legal fees and expenses, financing-related damages, increased project administration costs, and other direct damages recoverable under the EPCA.

178. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT VIII**
**BREACH OF CONTRACT**
**Failure to Cure Defaults Following Notice of Continuing Default**

179. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 178 as though fully set forth herein.

180. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

181. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

182. Samaritan issued the Notice of Continuing Default dated June 8, 2026, identifying BJC's continuing defaults, Contractor Events of Default, and ongoing failures to comply with the EPCA.

183. The Notice of Continuing Default demanded cure of the identified defaults and afforded BJC an opportunity to cure in accordance with the EPCA.

184. BJC failed to cure the identified defaults within the time provided by the EPCA.

185. BJC's failure to cure the identified defaults constituted a material breach of the EPCA and further established Contractor Events of Default under Sections 12.2(b), 12.2(c), 12.2(d), 12.2(f), 12.2(p), and 12.2(s).

186. Further, BJC's failure to continue diligently performing the Work notwithstanding ongoing disputes further constituted a material breach of Section 4.11 of the EPCA.

187. As a direct and proximate result of BJC's breach and failure to cure, Samaritan was entitled to terminate the EPCA for cause pursuant to Article 12 and Section 12.4(a).

188. Samaritan exercised its contractual rights and issued its Notice of Termination for Cause dated July 7, 2026.

189. As a direct and proximate result of BJC's breach, Samaritan suffered Delay Liquidated Damages, Completion Costs, costs associated with Project transition and completion, third-party charges and claims arising from BJC's defective work and delays, and other direct damages recoverable under the EPCA.

190. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**COUNT IX**
**BREACH OF CONTRACT**
**<u>Post-Termination Breaches and Failure to Transfer Project Information</u>**

191. Samaritan incorporates by references the allegations contained in Paragraphs 1 through 190 as though fully set forth herein.

192. The EPCA constitutes a valid and enforceable contract between Samaritan and BJC.

193. Samaritan performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

194. Following Samaritan's termination of the EPCA for cause, Section 12.4(c) required BJC, upon Samaritan's request, to withdraw from the Site, assign requested subcontracts, purchase orders, and permits, and deliver and make available all information, drawings, specifications, documents, licenses, administration materials, and other information reasonably related to the Work and reasonably necessary to permit Samaritan to complete, or cause the completion of, the Work.

195. Section 12.4(c) further authorized Samaritan to take all actions necessary to complete the Work, including employing other persons or entities to finish the Work by whatever method Samaritan may deem expedient.

196. Despite BJC's contractual post-termination obligations, and despite BJC's representation that it would cooperate in an orderly transition, BJC failed to promptly provide Project information, subcontractor information, vendor information, schedules, procurement records, warranty information, project documentation, and other materials necessary for Samaritan and its replacement contractors to evaluate Project status and complete the remaining Work.

197. BJC further failed to promptly transfer possession and control of Project information, records, materials, and completion-related information necessary for Samaritan to effectively manage, transition, and complete the Project.

198. Importantly, these contractual obligations are both triggered by and survive BJC's termination from the Project.

199. BJC's post-termination failures constituted material breaches of the EPCA, including, but not limited to, Section 12.4(c).

200. As a direct and proximate result of BJC's post-termination breaches, Samaritan has incurred and continues to incur transition costs, consultant expenses, replacement contractor costs,

project administration costs, delay damages, Completion Costs, and other direct damages recoverable under the EPCA.

201. Samaritan is entitled to recover all damages available under the EPCA and applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Samaritan Solar LLC respectfully requests that this Court enter judgment in its favor and against Defendant Boyd Jones Construction Company and award:

A. Compensatory damages in an amount to be determined at trial;

B. Completion Costs recoverable under Section 12.4(c) of the EPCA;

C. Delay damages and other contract damages recoverable under the EPCA;

D. A declaration that Samaritan has complied with all of its obligations under the PECA:

E. Pre-judgment interest;

F. Post-judgment interest;

G. Costs of suit;

H. Attorneys' fees; and

I. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Kevin C. Meacham*

Kevin C. Meacham (PA ID 208152)
Cara L. Brack (PA ID 330369)

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
One PPG Place Suite 3200
Pittsburgh, PA 15222

(412) 730-4050 (Telephone)
(412) 567-9241 (Fax)
Kevin.meacham@nelsonmullins.com
Cara.brack@nelsonmullins.com

*Counsel for Plaintiff Samaritan Solar, LLC*