# EXHIBIT B

BIRCH CREEK

VIA EMAIL, DELIVERY RECEIPT REQUESTED

June 8, 2026

Boyd Jones Construction Company
950 S. 10th St., Ste. 100
St. Louis, MO 36103
Attn: Andrew Crane
Email: acrane@boydjones.biz

Samaritan Solar Project
c/o Birch Creek Energy
2650 Locust Street, Suite 100
St. Louis, Missouri 63103

**RE: Solar Project Engineering, Procurement and Construction Agreement**
**Samaritan Solar Project - Notice of Continuing Default.**

Dear Mr. Crane,

Reference is made to the Solar Project Engineering, Procurement and Construction Agreement by and between Samaritan Solar LLC ("Owner") and Boyd Jones Construction Company ("Boyd Jones" or "Contractor") dated March 20, 2025 ("Agreement" or "EPCA"). All terms not otherwise defined herein shall have the meaning set forth in the Agreement.

Contractor filed a Mechanic's Lien on the property in the Erie County Court of Common Pleas at Case No. 2026-11293 in the amount of $3,063,630.46, asserting entitlement to payment for work, equipment and materials furnished on the Project. Owner has properly exercised the broad discretion to withhold payment under the Agreement due to Owner's incurrence of Delay Liquidated Damages, Contractor's continuing defaults, and failure to prosecute the Work on a good-faith basis and in conformance with the Agreement. Because of the continuing defaults, incomplete Work on the Project and the incurrence of damages, including damages that exceed the Delay Liquidated Damages limit, Contractor is not entitled to any payment, including the amount Contractor claims it is owed in its improperly filed Mechanic's Lien.

## I. Contractor Owes Liquidated Damages Due to Contractor's Delay.

Pursuant to Section 4.8 of the Agreement, Owner is entitled to assess liquidated damages where the contractor fails to meet Mechanical Completion or Substantial Completion by the applicable Guaranteed Mechanical Completion Date or Guaranteed Substantial Completion Date, with such damages accruing on a daily basis until the applicable milestone is achieved. For delays in achieving Mechanical Completion, Delay Liquidated Damages are calculated at a rate of $750 per MWac per day, multiplied by the Project's MWac

BIRCH CREEK

capacity. For delays in achieving Substantial Completion, liquidated damages are calculated at (i) $1,000 per MWac per day for the first thirty (30) days of delay, and (ii) $1,500 per MWac per day thereafter, in each case multiplied by the project's MWac capacity until Substantial Completion is reached. Notwithstanding the foregoing, the Agreement expressly provides that such Delay Liquidated Damages are payable on a rolling basis beginning on the thirtieth (30th) day after the applicable Guaranteed Completion Date and continuing every thirty (30) days thereafter, and further authorizes Owner, at its option, to deduct or set off accrued Liquidated Damages against any progress payments or other amounts otherwise due to Contractor.

Contractor failed to achieve Mechanical Completion by the Guaranteed Mechanical Completion Date of November 24, 2025. *See* ECPA §§ 4.1(b), 4.3. Contractor did not achieve Mechanical Completion until December 8, 2025, fourteen (14) days late. Indeed, Contractor's own submissions acknowledge that Mechanical Completion was not achieved until December 8, 2025. Contractor's failure to meet the Guaranteed Mechanical Completion deadline resulted in $126,000 in Delay Liquidated Damages. Contractor also failed to achieve Substantial Completion by the Guaranteed Substantial Completion Date of December 31, 2025. *See* ECPA §§ 4.1(b), 4.5. As of the date of this notice, Contractor has not met the Substantial Completion criteria. The Project now remains substantially past the Guaranteed Substantial Completion Date—more than 150 days. Contractor's actions continue to impede the Project's progress toward Substantial Completion. Contractor therefore failed to achieve both Mechanical Completion and Substantial Completion by their respective Guaranteed Completion Dates, and Substantial Completion remains outstanding as of the date of this letter.

Accordingly, on April 30, 2026, and May 14, 2026, Owner submitted to Contractor Notices of Withholding. In those letters, Owner advised Contractor that it was exercising its rights under Section 5.4(c) and stated that, as of that date, Mechanical Completion had been achieved fourteen (14) days after the Guaranteed Mechanical Completion Date and Contractor's schedule was well past the Guaranteed Substantial Completion Date. Owner further advised that, based on the delay rates set forth in the Agreement, Delay Liquidated Damages incurred by the Owner had already reached the contractual cap of ten percent (10%) of the Contract Price, or $1,331,570.90, and that Owner therefore intended to withhold the entirety of Contractor's 2026 applications for payment. *See* ECPA §§ 4.8(a), 5.4(c), 9.2. Currently, Owner has exercised its rights under § 5.4(c) to withhold approximately $620,480.45 from Contractor's payment applications on account of such Delay Liquidated Damages and other continuing defaults, and reserves the right to continue withholding amounts up to the applicable cap as may be appropriate under the ECPA. Alternatively, Contractor must pay all Delay Liquidated Damages in full to owner prior to Substantial Completion. *See* ECPA §§ 4.5(b)(xiii), 4.8. Owner disputes any assertion that any additional amounts are presently due to Contractor, including those asserted as owed in the Mechanic's Lien, and reserves all rights with respect to the proper accounting and allocation of such amounts and the ability to seek all legal and equitable remedies available to Owner regarding the same.[1]

[1] The filing of the Mechanic's Lien claim has clouded title to the Samaritan Solar Project and materially damaged Owner's efforts relating to project financing. Additionally, Contractor's filing of the liens preclude the achievement of Substantial Completion.

BIRCH CREEK

**II. Contractor's Continuing Defaults and Failure to Prosecute Work on a Good Faith Basis.**

Section 5.4(c) of the Agreement independently provides Owner with broad rights to withhold, deduct, or set off payments otherwise due to Contractor where reasonably necessary to protect Owner from loss or to recover amounts to which it is entitled under the Agreement. This includes the right to withhold payment during any continuing Contractor default, as well as for amounts arising from overpayments, third-party claims, defective or incomplete work, disputed sums, and any other amounts recoverable by Owner under the Agreement. Contractor has committed and failed to cure numerous continuing defaults including, *inter alia*:

- Contractor's failure to timely achieve Mechanical Completion in violation of EPCA §§ 4.1 and 4.3.
- Contractor's failure to timely achieve Substantial Completion in violation of EPCA §§ 4.1, 4.5, and 12.2(f).
- Contractor's failure to prosecute the work and comply with the Project Schedule and related reporting and recovery obligations in violation of EPCA §§ 4.1(c), 4.2, 12.2(b) and (d).
- Contractor's failure to comply with proper project administration requirements in violation of EPCA § 4.2.
- Contractor's failure to provide properly completed applications for payment with conforming lien waivers in violation of EPCA § 5.4(a).
- Contractor's failure to comply with proper notice requirements in violation of EPCA § 6.5.
- Contractor's failure to cure deficiencies constituting Contractor Events of Default. *See*, *e.g.*, ECPA, §§ 12.2(b), 12.2(d), 12.2(f), 12.2(s).

Contractor's defaults are ongoing, remain uncured, and are causing Owner immediate and ongoing harm.

**1. Contractor's Failure to Meet Project Deadlines.**

**a. *Failure to Timely Achieve Mechanical and Substantial Completion*.**

Contractor is required, on a fixed-price turnkey basis, to "diligently, duly and properly perform and complete the Work" and to "achieve the Key Project Milestones by the Key Dates, Mechanical Completion Date, and Substantial Completion by the Guaranteed Substantial Completion Date." Contractor is also required to comply with the Project Schedule and to achieve Mechanical Completion and Substantial Completion by the Guaranteed Dates. *See* §§ 2.1, 4.1(b), 4.1(c). Contractor has failed to meet the minimum standards therein.

As noted above, Contractor failed to meet the Guaranteed Mechanical Completion Deadline by fourteen (14) days. Contractor missed the Mechanical Completion deadlines due to its own inability to prosecute the work, including, but not limited to, the failure to adequately staff the Project with appropriately qualified personnel. This includes significant missed and delayed design, procurement, and construction activities on Contractor's behalf—well before Contractor submitted any formal notice of

alleged pile-related or other Excusable Events to Owner. By way of example, Contractor's Electrical IFCs were due on May 23, 2025, but were not delivered until June 11, 2025, with later revisions extending into October 2025. Contractor's Mechanical IFCs were likewise due on May 23, 2025, but were not delivered until June 30, 2025.

Contractor's actions caused substantial delays in underground DC installation, underground AC installation, SCADA installation, met stations, and POI installation, among other Critical Path Work activities. As of September 3, 2025, Owner's records reflected zero percent completion for module and racking installation, while multiple other Critical Path Work activities remained incomplete or materially behind schedule in the period leading up to the Guaranteed Mechanical Completion Deadline.[2]

Significantly, the Project has not yet reached Substantial Completion, which is more than 150 days past due, and Contractor has failed to provide any updates or supporting information necessary for Owner to evaluate progress or determine a credible path to reaching Substantial Completion.[3] More than ninety (90) uncompleted items remain outstanding on the project. Compounding these deficiencies, Contractor has materially reduced its workforce and project resources, further impairing its ability to furnish sufficient labor and to diligently prosecute and complete the Work in accordance with the ECPA.[4] Despite assurances that Contractor would continue to prosecute the Work on the project, Contractor has failed to meet its obligations under the EPCA.[5]

In addition, Contractor filed a Mechanic's Lien on the property in the Erie County Court of Common Pleas at Case No. 2026-T-1254. The filing of the that lien constitutes an encumbrance on title and prevents satisfaction of the conditions precedent to Substantial Completion under § 4.5(b), including the requirement

---

[2] On March 26, 2026, Contractor submitted a formal REA seeking $2,443,150 and twenty-five (25) compensable calendar days in connection with its efforts to reach Mechanical Completion. Owner rejected this REA and all factual assertions alleged therein. As stated above, all delays were attributable to Contractor's own failures to prosecute the work in a timely and competent manner. Owner rejects any contention that Change Orders resulted in any delay, as all Change Orders were executed with zero impact to schedule.

[3] On January 4, 2026, Owner expressly notified Contractor that Contractor had missed the Guaranteed Substantial Completion milestone. Owner subsequently issued Notices of Withholding on April 30, 2026 and May 14, 2026.

[4] Contractor's failure to adequately supply workforce for the project violates Section 4.1(c) of the Agreement, which requires Contractor to "furnish sufficient labor forces" and work such hours as necessary to assure completion of the Work in accordance with the Project Schedule and those Guaranteed Dates. Contractor's employee turnover and purposeful reduction in workforce demonstrates that it has not and cannot comply with the provisions of the EPCA and meet the Substantial Completion deadline.

[5] Owner is aware that Contractor has made a business decision to exit this line of work. Contractor's internal business decisions do not excuse or modify its contractual obligations under the ECPA.

that Contractor must not have "taken or allowed any action to occur to prevent title from transferring to Owner[.]" *See* ECPA § 4.5(b)(xvi). The lien has further impaired Owner's ability to finance the Project and advance the Project toward completion.

Owner made repeated accommodations and expended substantial good faith efforts to facilitate Contractor's performance and completion of the Work. Those efforts included requests for substantiation of claimed impacts, implementation of tracking and recovery measures, repeated requests for completion plans, and repeated opportunities for Contractor to correct nonconforming submissions and deficient performance. Notwithstanding those efforts, Contractor failed to bring the Work into compliance with the Agreement or timely achieve the required project milestones.

Contractor has failed to achieve Substantial Completion within the timeframes required under the ECPA, including beyond thirty (30) days after the Guaranteed Substantial Completion Date. Delay Liquidated Damages incurred by the Owner have already reached the contractual cap of ten percent (10%) of the Contract Price. Contractor's ongoing failure to timely achieve Substantial Completion, together with its inability to provide a credible path to completion, constitutes an Event of Default under Section 12.2(f) of the ECPA. Owner expressly reserves all rights arising out of Contractor's continuing failure to achieve Substantial Completion, including the right to assert additional defaults as they arise under the ECPA.

***b. Failure to Prosecute Work and Comply with Project Schedule.***

Contractor also failed to provide sufficient workforce to prosecute and complete the project. The failure to prosecute is also demonstrated by Contractor's repeated inability to meet intermediate contract completion deadlines including, but not limited to, Electrical IFCs, Mechanical IFCs, SCADA IFCs, Underground DC Install, Underground AC Install, Final Geotech Deadline, SCADA Install, Met Stations, POI Install, Landscape Buffer Install, and Fence Install. These intermediate defaults resulted in Contractor failing to comply with the Project Schedule by failing to meet the Mechanical Completion deadline by fourteen (14) days and is in continued violation of the EPCA by being 150 over days behind the agreed-upon Substantial Completion deadline. Pursuant to § 5.4(c), Owner is entitled to withhold amounts on account of such Delay Liquidated Damages and, without limitation, other ongoing defaults, defective or incomplete Work, and amounts reasonably in dispute. Owner has also incurred, and continues to incur, additional damages and harm, including, but not limited to, damages related to existing and anticipated third-party claims arising from Contractor's delays and other defaults. As a result, Contractor has committed an Event of Default under Sections 12.2(b) and 12.2(d).

**2. Failure to Comply with Contractual Notice and Claims Procedures.**

Although Contractor has attempted to justify its performance failures by asserting claims for excusable delay and additional compensation, the record demonstrates that Contractor failed to comply

with the Agreement's mandatory notice and claims procedures.[6] Under Section 6.5 of the Agreement, Contractor was required to provide timely notice of any alleged Excusable Event within five (5) Business Days, followed by a second written notice within five (5) Business Days thereafter describing the particulars of the event, including demonstrable proof, anticipated delay length, and estimated costs. Contractor failed to satisfy these requirements. With respect to the alleged pile refusal conditions, Contractor was aware of the issue no later than September 8, 2025, but did not submit formal written notice until September 24, 2025.

Section 7.3(a) expressly provides that Contractor's failure to submit a Change Order request in compliance with the Agreement "shall constitute a waiver of Contractor's rights to such Change Order." Contractor nevertheless later submitted a formal REA on March 26, 2026, seeking $2,443,150 and twenty-five (25) compensable calendar days. Owner disputes both the factual assertions and the contractual basis for that claim. The REA was submitted months after the alleged triggering events, more than five (5) months after the claimed Mechanical Completion period, and in a form that did not comply with the contractually required Change Order process.

Further, any claims that delay in Mechanical Completion or Substantial Completion were excusable due to Excused Site Conditions is rejected as Contractor expressly acknowledged and agreed in Section 2.18 that it reviewed and accepted the Site conditions and Owner-Supplied Information, and that such conditions would not excuse performance or justify adjustments to the Contract Price or schedule absent strict compliance with the Agreement. Contractor's Notices attempting to justify these delays as an Excusable Event failed to comply with the provisions of the EPCA, thus waiving Contractor's right to an Excusable Event that would change the Guaranteed Mechanical Completion Date. *See* ECPA § 4.2 ("[n]otwithstanding anything to the contrary, in no event will the Guaranteed Mechanical Completion Date, Guaranteed Substantial Completion Date or any of the Key Dates be extended except pursuant to a Change Order or Excusable Event.").

The Agreement also bars recovery where Contractor-caused delay exists concurrently with any alleged Excusable Event. *See* EPCA § 6.6. The Project record reflects substantial preexisting and concurrent Contractor-caused delay across design, procurement, and construction activities independent of the alleged pile-related impacts. These concurrent shortfalls further confirm that Contractor's failures were not caused solely, or even primarily, by the pile-related conditions later asserted by Contractor. Accordingly, Contractor has no contractual basis to excuse its delays or avoid liability for its failure to achieve completion. Nor did Contractor comply with the notice requirements set forth in Section 6.5 of the Agreement. Such failure to comply with the notice requirements waives Contractor's rights to claim any excusable delay.

**3. Contractor's Failure to Comply with Proper Project Administration Requirements.**

The Agreement also imposed detailed scheduling and reporting obligations on Contractor. Under § 4.2, Contractor was required to develop and maintain a Level III detailed resource and work-hour loaded

---

[6] Owner is in receipt of and expressly rejects Contractor's factual and other contentions set forth in Contractor's March 26, 2026, April 2, 2026, and May 27, 2026 letters to Owner regarding these disputes.

BIRCH CREEK

CPM Schedule, submit updated CPM progress schedules and Monthly Progress Reports no less often than monthly, provide daily construction reports after construction commenced, and furnish a Remedial Action Plan within five (5) Business Days if Owner reasonably determined that Contractor was behind schedule with respect to any Milestone.

Despite those obligations, Owner repeatedly identified deficiencies in Contractor's reporting, including on July 7, 2025, August 14, 2025, August 25, 2025, November 13, 2025, February 10, 2026, February 19-20, 2026, and again in April 2026, when Owner noted that required Monthly Progress Reports and supported documentation remained missing or were materially deficient. Owner also repeatedly raised concerns regarding Contractor's inability to provide a sufficient recovery or completion plan.

**4. Contractor's Failure to Provide Properly Completed Application for Payments with Conforming Lien Waivers.**

In addition to Contractor's various failures, Contractor's payment support and lien waiver submissions were deficient. Section 5.4(a) required Contractor to submit, with each application for payment, supporting documentation, conditional progress lien waivers, unconditional progress lien releases for prior payments, and all other required backup. Contractor failed to provide complete and conforming payment applications, including lien waiver packages and related supporting materials for multiple payment applications. Owner communicated those deficiencies in writing, including, but not limited to, by requests on February 19, 2026, February 20, 2026, March 12, 2026, March 17, 2026, April 2, 2026, and April 6, 2026, thus those pay applications (and numerous others) were never "properly completed" or deemed accepted. *See* ECPA §§ 5.4(a), 5.4(c), 5.8.

**5. Failure to Cure Deficiencies Despite Notice.**

Contractor's defaults have caused Owner to incur damages in excess of the contractual cap on Delay Liquidated Damages, which are increasing daily. As Contractor is aware, in May 2026, Owner in good faith attempted to find a workable resolution to the various defaults outlined in this Notice by holding Management Negotiations pursuant to Section 16.3(a) of the Agreement. Despite Owner's efforts, Contractor rejected all workable paths forward. As such, Owner hereby reiterates its intention to withhold payment for the Delay Liquidated Damages as well as to protect itself during Contractor's continuing default. Owner also demands cure of all other defaults within fifteen (15) days, as well as the timely completion of the Project.

Nothing contained in this letter shall be deemed or construed as a waiver of any default, whether known or unknown, or of any right or remedy available to Owner under the Agreement or applicable law. Owner expressly reserves all rights and remedies arising out of Contractor's defaults, including, without limitation, the right to recover Liquidated Damages, direct damages, Completion Costs, and to withhold, deduct, and set off amounts pursuant to the Agreement. Nor shall be deemed an election of remedies or a limitation on Owner's ability to pursue any additional or alternative remedies, whether under the Agreement or at law or in equity, including in connection with Contractor's payment claims, asserted lien rights, or any proceeding arising out of the Project.

BIRCH CREEK

We trust you appreciate the urgency of this letter and look forward to your prompt response. Please contact me with any questions or concerns regarding these issues.

Sincerely,

Samaritan Solar, LLC

Dan Siegel

cc: VIA EMAIL
siegel@birchcreekdev.com
witsken@birchcreekdev.com
hylton@birchcreekdev.com
huntley@birchcreekdev.com
legal@birchcreekdev.com